William Arthur McNEILL, Appellant,

v.

McDAVID INSURANCE AGENCY et al., Appellees.

No. 18208.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 24, 1980.

Catherine H. Adamski, Fort Worth, for appellant.

Simon, Peebles, Haskell, Gardner & Betty, and Anne Gardner, Fort Worth, for appellees.

## OPINION

SPURLOCK, Justice.

This is an appeal of a take nothing judgment rendered in a suit alleging a deceptive trade practice. The plaintiff alleged he was mislead into the belief that he had acquired liability insurance for an automobile he had just purchased, when in fact he only received collision, comprehensive, and towing and labor coverages. This allegation is based on evidence of the following: a request for complete coverage including liability; that the title of the insurance application form used referred to liability coverage; and that the soliciting agent failed to explain what coverages were included in the application. The issues presented are whether there is any evidence of a deceptive trade practice, whether a soliciting agent has the duty to inform an applicant what coverages are included on the application form, and whether there is any evidence of agency.

We affirm.

Because numerous parties are involved it is helpful to first identify them. Sgt. William McNeill was the plaintiff below and is the appellant. Sgt. McNeill purchased an automobile from Bill McDavid Pontiac. Associated with Bill McDavid Pontiac is McDavid Insurance Agency, one of the defendants below and an appellee. The McDavid Agency solicits applications for policies of automobile insurance and submits these applications to various insurance companies for acceptance. V. H. Cameron is an agent employed by the McDavid Agency. The soliciting agents at the McDavid Agency report to Cameron. Clark and Company is an insurance company which receives applications from the McDavid Agency and writes policies of insurance. The application form used in this case was Clark and Company's form. Vico County Mutual Insurance Company is the company which issued the policy to Sgt. McNeill, which did not afford liability coverage.

At the time Sgt. McNeill was purchasing the automobile from McDavid Pontiac it appears that the Carswell Air Force Base Credit Union was going to finance some or all of the purchase price. Before it would provide any financing it required Sgt. McNeill to secure collision and comprehensive insurance coverages on the automobile. As a result of this requirement Sgt. McNeill discussed his insurance needs with an individual from the McDavid Agency. Cameron identified the individual as a soliciting agent, Dave Moore. As a result of this discussion, Sgt. McNeill, with Moore's assistance, applied for insurance.

The application form used had the name, address, and phone numbers of Clark and Company printed on the top of the form. Below this was the title of the form: "AUTOMOBILE LIABILITY AND PHYSICAL DAMAGE INSURANCE APPLICATION". The application was dated April 2, 1976 and was signed by Sgt. McNeill. The application did not include a request for liability coverage in that no premium charge was entered in the space providing for that coverage. Vico County Mutual issued a policy of insurance on Sgt. McNeill's automobile which included collision, comprehensive, and towing and labor coverages. It did not include liability coverage. The policy was dated April 2, 1976.

Before Sgt. McNeill received his policy from Vico he was involved in a collision with another automobile, which totally destroyed the automobile he had purchased from McDavid Pontiac. Sgt. McNeill testified he was at fault and made a claim for liability. He was informed that he had no liability coverage under the policy though the company would honor the collision cov-

erage provisions of the policy. The driver and passenger of the other vehicle recovered a judgment against Sgt. McNeill in the amount of $4,297.69. McNeill then filed this suit against Cameron, the McDavid Agency, Clark and Company, and Vico County Mutual. McNeill's allegation was that he was mislead into the belief that he had liability coverage, which he would have secured had he known he had not received the coverage. He asserts that he was thereby damaged in the amount of the judgment plus the cost of defense.

There is no allegation of any oral misrepresentation by any defendant. Sgt. McNeill's position in the trial court and on appeal simply stated is: that because he requested liability coverage, saw a reference to liability insurance in the title of the application form, and the agent failed to explain the terms of the application or what coverages were included, he justifiably relied on the agent to apply for liability coverage to his detriment. He contends he was mislead into the belief that he had liability coverage. Thus Sgt. McNeill claims to have been mislead through omission or silence rather than by commission. He states this violates Tex.Ins.Code Ann. art. 21.21 Sec. 4(1) and (2) (1963), and constitutes a deceptive trade practice under Tex.Bus. & Comm.Code Ann. Sec. 17.-50(a)(4) (Supp.1980).

▇ The case was tried without a jury. After Sgt. McNeill rested, Cameron and the McDavid Agency moved the court to "direct judgment for said defendants as a matter of law". Clark and Company and Vico County Mutual joined in the motion which the trial court granted Sgt. McNeill appeals the take nothing judgment by points of error which allege the trial court erred because the evidence conclusively established the deceptive trade practice alleged. We do not find that the evidence conclusively establishes such an act or practice. However, on oral argument all parties agreed with us that the standard for review of this case is the same as the standard for review of cases in which the trial court directed a verdict for the defendant. Where, as here,

a motion for judgment as a matter of law was granted after the close of the plaintiff's case in chief, without the defendant having first rested, such judgment cannot stand if there is any evidence in the record more than a scintilla, which, together with the inferences that may be reasonably drawn therefrom, raise an issue of fact whether there was a deceptive trade practice. In making this determination we look only to the evidence tending to support the plaintiff's position and disregard any contrary evidence.

An exhaustive review of the record reveals that Sgt. McNeill testified he told the soliciting agent, Moore, he wanted "full coverage with auto liability insurance". He also testified as to what he meant, "I wanted everything, including auto liability insurance, and everything that's involved in complete coverage". It is undisputed that the title on the application form used was "AUTOMOBILE LIABILITY AND PHYSICAL DAMAGE INSURANCE APPLICATION". It is also undisputed that no promises were made to Sgt. McNeill concerning insurance. However, he testified that Moore did not discuss what coverages he was going to have, nor explain what the numbers on the left-hand side of the application meant. The coverages page on the front of the insurance policy stated: "The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto." Thus the policy informed Sgt. McNeill that it included only those coverages for which a premium charge appeared in the space next to the coverage. The application form did not have any such language or other instruction on how to determine what coverages were included therein.

We reject Sgt. McNeill's position that the above is evidence of a deceptive trade practice because it constitutes a misrepresentation or false advertising prohibited by Tex. Ins.Code Ann. art. 21.21 (1963). Article 21.-21, Sec. 4(1) provides as follows:

"The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

"(1) Misrepresentations and False Advertising of Policy Contracts. Making, issuing, circulating, or causing to be . . circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statements as to the dividends or share of surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance; . . . ."

■■ In our opinion evidence that the title of an insurance application form contains a reference to a coverage for which the applicant did not apply or receive is no evidence of a misrepresentation or deceptive act or practice under the above section. The application was exactly what its title represented it to be, an application whereby an applicant could apply for automobile liability and physical damage coverages. Section 4(1) prohibits misrepresentation of policies issued or about to be issued. The application in this case was a mere offer to purchase insurance. It was no guarantee that any coverage would be provided. We note it is undisputed that no promises were made to Sgt. McNeill concerning insurance coverage. There is no evidence in the record of any form of binder. Therefore, the application in this case cannot be construed as a policy to which Sec. 4(1) applies and there is no evidence of a misrepresentation or deceptive act prohibited by this section.

It is also Sgt. McNeill's position that evidence that he specifically requested liability coverage, used an application form referring to liability coverage, and was not informed by the agent that he was not applying for liability coverage is a deceptive trade practice. He testified that he thought he had received liability coverage and would never have driven off McDavid's lot had he known he was not covered. He bases his assertion of a deceptive trade practice on the fact that the agent, Moore, failed to explain the application form and failed to inform him that Moore had not applied for liability coverage.

■ We find no provision in Tex.Ins.Code Ann. art. 21.21 (1963) by which such a failure could be construed as a deceptive act or practice. However, because an insurance policy is a service under the Deceptive Trade Practice-Consumer Protection Act, *Dairyland County Mut. Ins. Co. v. Harrison,* 578 S.W.2d 186 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ), we assume without deciding that Tex.Bus. & Comm.Code Ann. Sec. 17.46(b)(23) (Supp.1980) would govern. This subsection defines a deceptive practice as follows:

"[T]he failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

■ We are convinced that whether the failure of an insurance soliciting agent to explain the terms of an insurance application or otherwise inform the applicant of what coverages were included in the application is any evidence of a deceptive trade practice depends on whether the agent had the duty to make such explanation, or whether there is also evidence of the intent to deceive or induce the applicant into a transaction. The first issue raised is what duty does an insurance soliciting agent have with respect to explaining the terms of the application form and coverages included therein to an applicant?

In our opinion the duty of a soliciting agent in this regard depends on whether the solicitor is the agent of the applicant or of the insurer. It is well settled that if the agent of the applicant agrees to secure insurance for the applicant, but fails to do so, the agent has the duty to inform the applicant that no insurance has been secured. *Burroughs v. Bunch*, 210 S.W.2d 211 (Tex.Civ.App.—El Paso 1948, writ ref'd). Likewise, we decide that when the agent of an applicant agrees to apply for insurance on behalf of the principal, the agent has the duty to either explain the terms of the application form, or otherwise inform the principal what coverages are included in the application. The principal should be entitled to reasonably rely on the expertise by the principal. However, without proof that the applicant's agent is also the agent of the insurer, the insurer would not be liable for breach of this duty.

It was Sgt. McNeill's position in the trial court and on appeal that Moore was an agent of the McDavid Agency, Clark & Company, and Vico County Mutual. Sgt. McNeill has never asserted; nor have we found any evidence in the record, that Moore was McNeill's agent. The fact there is evidence to the effect that Moore supplied, filled out, and had Sgt. McNeill sign the application form is no evidence of an agency relationship between them. It is just as reasonable to infer that such action resulted from accommodation rather than agency. The only evidence in the record on this question is in accord with Sgt. McNeill's position that Moore was an employee and agent of the McDavid Agency.

While we have decided that the agent of the applicant has the duty to explain the terms of and coverages included in the application, we are not prepared to extend this duty to solicitors who are the agents of insurers. We are not prepared to hold that an agent of the insurer has the duty to prevent the applicant from being self-deceived. This would make the agent an insurer that there is no misunderstanding or mistake concerning the application for insurance. Such a decision could inhibit the practice of soliciting agents in the accommodation of applicants by providing application forms and assisting in the preparation thereof. However, by our reluctance to penalize the actions of agents accommodating applicants, we in no way condone any unfair or deceptive practice.

Having held that under the facts of this case mere omission of explanation was not a deceptive practice, because there was no evidence the solicitor was the applicant's agent, we must examine the record to determine whether there is any evidence of intent to deceive or induce the applicant. Evidence of such intent to deceive or induce under certain circumstances could constitute a deceptive trade practice. After a thorough review of the record we conclude there is no evidence of any such intent on the part of any defendant in this case. Therefore we find no evidence of a deceptive trade practice.

An additional ground exists for affirmance of this case as to Vico County Mutual. It has been held that the provisions of the Deceptive Trade Practice—Consumer Protection Act do not apply to county mutual insurance companies. *Mobile Cty. Mut. Ins. Co. v. Jewell*, 555 S.W.2d 903 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.). Therefore, it appears that even had there been evidence of a deceptive trade practice, Vico County Mutual would not be liable therefor. However, a complete consideration of this point is not necessary because there is no evidence of such a practice in this case.

Each point of error presented in complaint of the trial court's judgment has been severally considered. Each is overruled. There being no evidence in the record of a deceptive trade practice, no prima facie case was made. The trial court did not err in rendering judgment that appellant take nothing.

The judgment is affirmed.